# Exhibit 11

In Re: Administrative Subpoena
25-1431-032 to Rhode Island Hospital

Misc. Action No. _____

**<u>EMERGENCY MOTION TO QUASH
SUBPOENA DUCES TECUM</u>**

**REQUEST FOR EXPEDITED RELIEF
PURSUANT TO LR CV 9**

## DECLARATION OF DR. ABIGAIL DONALDSON, M.D.

I, Dr. Abigail Donaldson, declare as follows:

1.      I am the division director of the Adolescent Medicine Division of Hasbro Children's at Rhode Island Hospital (RIH). I have served in this role for 5 years.

2.      RIH provides comprehensive, multi-disciplinary gender-affirming care in Rhode Island, including through the Gender and Sexuality Program at Hasbro Children's Hospital, which is in the pediatric division of RIH.  Hasbro Children's Hospital's primary place of business is 593 Eddy St, Providence, RI 02903.

3.      As part of its gender-affirming care services for minors, RIH uses a patient-centered, consent-based process to better understand its patients' gender and sexual health care needs and goals. The range of services it provides includes thorough medical and psychosocial evaluations, initiation and continuation of gender care and hormone therapy, and referrals to other providers and community resources.

4.      I understand that the Department of Justice (the "Government") issued a subpoena (the "Subpoena") to RIH in July 2025, and that the Subpoena requests production of medical

records and confidential personal information concerning minor patients who received gender-affirming care at RIH.

5. A minor patient who receives gender-affirming care at RIH, along with that patient's parents or guardian, typically meet with one or more RIH providers and collaborating medical professionals over the course of multiple visits. No minor is seen at RIH for gender-affirming care without the knowledge and consent of their parent or legal guardian.

6. Throughout those visits and in related communications, the patient discloses private information about their mental health, sexual health, and fertility; information about relationships in school, parents' occupations, and neighborhood; names of families and friends, family medical history, any involvement with Rhode Island Department of Children, Youth, and Families or other state agencies; and more. All such disclosures are made to RIH for purposes of diagnosing and treating the patient.

7. During the course of the patient's care, the patient, along with the patient's parents, typically discuss a recommended treatment plan and any concerns about the treatment plan privately with the patient's provider. Each patient has a uniquely tailored care plan based on their mental health and medical assessments.

8. If medical treatment is being considered, and especially gender affirming hormone treatment, the assessment process includes a thorough medical and psychosocial evaluation of the patient, which includes (but is not limited to) evaluating the patient's physical function, cognitive abilities, communication skills, emotional functioning, and capacity for decision-making.

9. No medical treatments will begin until after informed consent is obtained from the parent(s)/legal guardian(s) with medical decision-making authority over the minor patient, and the minor patient provides their consent.

10.     Part of a patient's medical treatment plan may include taking hormonal medications. A provider, in consultation with the patients and their families, will determine which medications best serve the medical needs of the patient.

11.     The patient-physician relationship is sacred and fundamental. Confidentiality is central to that relationship. Patients seek medical care from RIH with the understanding that RIH will keep their highly sensitive and private medical records and personal information confidential.

12.     Production of a patient's medical records, name, Social Security number, and/or home address in response to the Subpoena will result in identification of the patient and disclosure of the patient's most intimate and personal details to the Government. Any such disclosure could cause severe emotional distress for the patient and family members and expose the patient and family members to the possibility of bullying, harassment, discrimination, and violence. Moreover, disclosure of this information will curtail the likelihood that an already vulnerable population of individuals will receive the care they need. The chilling effect caused by disclosure of patient records could also extend beyond gender-affirming care treatment to other aspects of medical care, such as mental health treatment, preventative care, emergency care, and other subspecialty care.

13.     The patient's privacy would not be protected by simply redacting the patient's name or address from records, as patients typically disclose other personally identifiable information to their providers—such as their relationships in school, parents' occupations, and extra-curricular activities—during their care.

14.     For all the reasons above, I believe that disclosure of the patients' medical records would cause irreparable harm to the patients. I also believe that disclosure of patients' medical records will irreparably harm the relationship between patients and medical care providers at RIH, which is based on trust and confidentiality.

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 5|7|26

/s/ _____

Dr. Abigail Donaldson, M.D.